**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | |
|---|---|
| DONNIE K., | ) |
| | ) |
| *Plaintiff*, | ) |
| | ) |
| v. | )  Civil Action No. 1:24cv135 (WEF) |
| | ) |
| MARTIN O'MALLEY, | ) |
| COMMISSIONER OF SOCIAL | ) |
| SECURITY, | ) |
| | ) |
| *Defendant*. | ) |
| | ) |

## <u>MEMORANDUM OPINION AND ORDER</u>

This matter is before the Court on the parties' cross-motions for summary judgment. (Dkts. 7, 11). Pursuant to 42 U.S.C. §§ 405(g), Plaintiff seeks judicial review of the final decision of Martin O'Malley, Commissioner of the Social Security Administration ("Commissioner"),[1] that denied Plaintiff's claims for disability insurance benefits under the Social Security Act. The Commissioner's final decision was based on a finding by the Administrative Law Judge ("ALJ") that Plaintiff was not disabled as defined by the Social Security Act and applicable regulations and a determination by the Appeals Council for the Office of Appellate Operations ("Appeals Council") that there was no basis to review the ALJ's decision.[2]

For the following reasons, it is **ORDERED** that the Commissioner's final decision is **REVERSED**, Plaintiff's Motion for Summary Judgment (Dkts. 7, 15) is **GRANTED**, the

---

[1]    Leland Dudek, is currently the Acting Commissioner of the Social Security Administration.

[2]    The Administrative Record ("AR") in this case has been filed under seal, pursuant to Local Civil Rules 5 and 7(C). (Dkt. 3). In accordance with those rules, this opinion and order excludes any personal identifying information such as Plaintiff's social security number and date of birth (except for the year of birth), and the discussion of Plaintiff's medical information is limited to the extent necessary to analyze the case.

Commissioner's Motion for Summary Judgment (Dkt. 11) is **DENIED**, and the case is remanded to the agency for further proceedings consistent with this opinion.

## I.  RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff was born in 1975 and was forty-six years old at the time of the alleged onset of disability. (AR 240).  Plaintiff graduated from high school and served in the United States Army from 1998 to 2014. (AR 260).  After leaving the Army, Plaintiff worked as a retail sales associate from 2019 to 2020 and as an IT business analyst from 2020 to 2021. (*Id.*).

In May 2021, Plaintiff applied for disability insurance benefits alleging a disability onset date of May 24, 2021. (AR 17, 69, 240–42).  Plaintiff claimed he was disabled due to post-traumatic stress disorder ("PTSD"), concentration problems, back and spinal injuries, arthritis, lupus, and skin rashes. (*Id.*).  In support of his claim, Plaintiff submitted, among other things, voluminous medical and mental health records, most of which were produced by the Veterans' Administration.  As part of the Social Security Administration's initial review of Plaintiff's claim, State Agency psychologist Joseph Leizer, Ph.D., reviewed Plaintiff's mental health records which reflected diagnoses of depression, PTSD, and anxiety. (AR 72-75).[3]  Based on his review, Dr. Leizer concluded that Plaintiff "appears to have some limitations in concentration, but overall his impairments appear non-severe." (*Id.*).  Dr. Leizer also noted that Plaintiff was "capable of doing a variety of [household] tasks [as] well as perform childcare for a significant portion of the day." (AR 73, 74, 75).  On November 5, 2021, the Social Security Administration denied Plaintiff's application for disability insurance benefits. (AR 68–78, 91–92).

---

[3]    Plaintiff's challenge to the Commissioner's decision denying disability insurance benefits pertains only to the ALJ's findings regarding Plaintiff's mental deficits and any corresponding work limitations.  Therefore, the summary of the record is limited to those issues.

On January 10, 2022, Plaintiff requested reconsideration of the denial of benefits. (AR 79). As part of the reconsideration process, State Agency psychologist Richard Milan, Jr., Ph.D., reviewed Plaintiff's mental health records and found that "[d]espite [Plaintiff's] diagnoses, history, and subjective reports, the objective evidence documents grossly intact mental functioning and no severe work-related limitation." (AR 85). Dr. Milan also noted that Plaintiff "takes care of his granddaughter which suggest that he is able to function adequately" and Plaintiff "would do fairly well with written instruction but would struggle somewhat with spoken instructions." (AR 81). On July 5, 2022, the Social Security Administration affirmed its denial of Plaintiff's application. (AR 79–89, 102–03).

On March 23, 2023, Plaintiff appointed attorneys David Bott and Colleen Illacqua to represent him with respect to his claims. (AR 192–95). Plaintiff then requested a hearing before an ALJ, which the Office of Hearing Operations scheduled for April 13, 2023, to be conducted virtually. (AR 165). This hearing was postponed due to technical issues (AR 38, 200) but was rescheduled for August 22, 2023. (AR 213).

On August 22, 2023, the assigned ALJ held a hearing on Plaintiff's disability claims. (AR 40–67). Plaintiff appeared with his attorney, Ms. Illacqua.[4] (AR 42). Plaintiff provided testimony and answered questions posed by the ALJ and by his own counsel. (AR 42–60). A vocational expert, Ms. Dominique Warner, also testified and answered hypothetical questions posed by the ALJ predicated on the evidence in the record. (AR 60–67). In addition to the reports of Drs. Leizer and Milan, the record also included mental health reports from Dr. Andrew Jones, Ph.D., a clinical psychologist, and Pamela Liddle, a nurse practitioner. (AR 1240, 1325-26). Dr. Jones' report stated that Plaintiff's symptoms "include [] intrusive disturbing memories, increased anxiety and

---

[4]    Although the hearing transcript refers to Plaintiff being represented by a "Ms. McLaughlin," this appears to be a mistake.

hypervigilance around crowds of people, fear of being trapped on a busy highway, startled reaction to loud unexpected noises, and restless sleep with nightmares." (AR 1240). Ms. Liddle's report expanded the record by summarizing Plaintiff's self-reported causes and effects of his PTSD and depressive episodes. (AR 1325-26).

On September 25, 2023, the ALJ issued a decision finding that Plaintiff was not disabled under sections 216(i) and 223(d) of the Social Security Act for the period of May 24, 2021, the alleged onset date, through March 31, 2023, the date that Plaintiff was last insured.[5] (AR 17–30). In his written decision, the ALJ followed the required five-step sequential evaluation in which the ALJ determined whether the claimant: (1) is currently engaged in substantial gainful employment; (2) has a severe impairment; (3) has an impairment that meets or equals any of the impairments listed in Appendix 1, Subpart P of the regulations that are considered *per se* disabling; (4) has the ability to perform past relevant work; and (5) if unable to return to past relevant work, whether the claimant can perform other work that exists in significant numbers in the national economy. *See id.* The claimant bears the burden to prove disability for the first four steps of the analysis. *See McLain v. Schweiker*, 715 F.2d 866, 868–69 (4th Cir. 1983). The burden then shifts to the Commissioner at step five. *See id.* The regulations promulgated by the Social Security Administration provide that all relevant evidence will be considered in determining whether a claimant has a disability. *See* 20 C.F.R. § 404.1520(a)(3).[6]

---

[5]     Plaintiff's earnings record showed that he acquired sufficient quarters of coverage to remain insured under the Social Security Act through March 31, 2023, and thus was required to establish disability on or before that date to be entitled to disability insurance benefits. (AR 17).

[6]     It is this process that the court examines to determine whether the correct legal standards were applied and whether the ALJ's final decision is supported by substantial evidence. *See id.*

4

As discussed below, the findings of the ALJ challenged by Plaintiff relate to the ALJ's conclusions at the second step of the sequential evaluation, namely that Plaintiff suffered "a moderate limitation" with respect to concentration, persistence, and pace. (AR 21). Specifically, the ALJ held the following:

> With regard to concentrating, persisting or maintaining pace, the claimant had a moderate limitation. The claimant alleges having difficulty focusing and concentrating due to PTSD symptoms. He had trouble in heavy traffic and around construction, but the record shows that he was able to manage his symptoms without much difficulty. In his function report, the claimant said he was able to follow written and spoken instructions, but he had more difficulty with spoken instructions. The claimant did not appear distractable during appointments. He could focus to drive short distances, do wood working and cabinet making, and he was able to provide daily care of his granddaughter. The record does not support more than moderate limitations in this area of functioning (Ex. 1F, 4F, 5F, 7F, 13F, 5E).[7]  (AR 21-22).

Having determined that Plaintiff suffered moderate limitations in concentration, persistence and pace, the ALJ was then required to determine Plaintiff's residual functioning capacity ("RFC"). The RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. SSR 96-8P, 61 Fed. Reg. 34,474 (July 2, 1996). The ALJ is also required to explain how the evidence supports the RFC. *Id*. The ALJ fashioned an RFC that held the following:

> Plaintiff was "able to perform tasks that do not require operation of a self-propelled vehicle on public roads; able to understand, remember, and carry out simple and routine work related instructions, and focus for periods of two hours on work related tasks; able to perform non-production pace/non-assembly line pace jobs with occasional workplace changes introduced gradually over time, and occasional independent decision-making and no responsibility for the safety of others; and able

---

[7]    The ALJ also made findings that Plaintiff suffered moderate limitations in (1) understanding, remembering, or applying information; (2) interacting with others; and (3) adapting or managing oneself. (AR 21-22). However, these findings and their corresponding RFCs are not challenged by Plaintiff.

to work with the general public, coworkers, and supervisors occasionally." (AR 22, 23).[8]

Plaintiff then requested review of the ALJ's decision by the Social Security Administration's Appeals Council. (AR 1-3).[9] On December 7, 2023, the Appeals Council denied

---

[8]      *See* Dkt. 7 at 7 (Plaintiff criticizing only the limitations in being able to "focus for periods of two hours on work related tasks and being able to perform non-production pace/non-assembly line pace jobs"); Dkt. 12 at 12 (Commissioner defending only the limitations to simple and routine work-related instructions, focusing for periods of two hours on work related task, non-production pace/nonassembly line pace jobs with occasional workplace changes introduced gradually over time, occasional independent decision-making having no responsibility for the safety of others, and work that does not require driving).

Consistent with the ALJ's opinion, the challenged portion of the RFC will be referred to as the "mental RFC" to distinguish from the physical limitations identified by the ALJ but not challenged by Plaintiff.

[9]      Other findings by the ALJ related to the denial of disability insurance benefits but not directly related to issues on appeal are the following:

(1) The claimant has not engaged in substantial gainful activity during the period from his alleged onset date of May 24, 2021 through his date last insured of March 31, 2023 (20 C.F.R. § 404.1571 *et seq.*).

(2) Through the date last insured, the claimant has the following severe impairments: degenerative disc disease of the cervical spine, degenerative disc disease of the lumber spine, degenerative disc disease of the thoracic spine, systemic lupus erythematosus, arthritis, obesity, posttraumatic stress disorder, and depressive disorder (20 C.F.R. § 404.1520(c)).

(3) Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. § 404.1520(d), 404.1525, and 404.1526).

(4) Through the date last insured, the claimant has the residual functional capacity ("RFC") to perform light work as defined in 20 CFR 404.1567(b) except that he is: able to frequently climb ramps and stairs, but never climb ladders, ropes and scaffolds; able to frequently balance; occasionally stoop, kneel, crouch, and crawl; unable to tolerate exposure to extreme heat, cold, vibration, and concentrated hazards such as unprotected heights or moving machinery; able to perform tasks that do not require operation of a self-propelled vehicle on public roads; able to understand, remember, and carry out simple and routine work related instructions, and focus for periods of two hours on work related tasks; able to perform non-production pace / non-assembly line pace jobs with occasional workplace changes introduced gradually over time, and occasional independent decision-making and no responsibility for the safety of others; and able to work with the general public, coworkers, and supervisors occasionally.

(5) Through the date last insured, the claimant was unable to perform any past relevant work (20 C.F.R. § 404.1565).

(6) The claimant was born in 1975 and was 48 years old, which is defined as a younger individual, on the date last insured (20 C.F.R. § 404.1563).

Plaintiff's request, finding no reason under its rules to review the ALJ's decision. (AR 1–6.)  As a result, the ALJ's decision became the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.981, 416.1481. (AR 1).

Plaintiff was given sixty (60) days from the denial by the Appeals Council to file a civil action challenging the decision. *See* 20 C.F.R. §§ 404.981, 416.1481; AR 2.  On January 29, 2024, Plaintiff filed this civil action seeking judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g). (Dkt. 1).[10]   Plaintiff filed his motion for summary judgment on June 12, 2024. (Dkt. 7, 15).[11]   After the parties consented to the undersigned's jurisdiction, the case was referred to the undersigned on June 20, 2024. (Dkt. 10). The Commissioner filed his cross-motion for summary judgment on July 17, 2024. (Dkt. 10)  Plaintiff filed a reply on July 30, 2024. (Dkt. 14).  The parties' cross-motions for summary judgment are now ripe for disposition.

---

(7) The claimant has at least a high school education (20 C.F.R. § 404.1564).

(8) The transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills claimant does not have past relevant work (20 C.F.R. Part 404, Subpart P, Appendix 2).

(9) Through the date last insured, considering the claimant's age, education, work experience, and RFC, there were jobs that exist in significant numbers in the national economy that the claimant can perform (20 C.F.R. §§ 404.1569 and 404.1569(a)).

(10) The claimant was not under a disability, as defined in the Social Security Act, at any time from May 24, 2021, the alleged onset date, through March 31, 2023, the date last insured (20 C.F.R. § 404.1520(g)).

(AR 19–30.)

[10]    The 60-day deadline begins five days after the date of the notice letter from the Appeals Council.  Therefore, Plaintiff's civil action was timely filed. (AR 2).

[11]    On June 12, 2024, Plaintiff filed his Brief in Support of his Motion for Summary Judgement.  (Dkt. 7).  Plaintiff filed his formal Motion for Summary Judgment on February 3, 2025. (Dkt. 15).

## II.  STANDARD OF REVIEW

Under the Social Security Act, the district court will affirm the Commissioner's final decision "when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence." *Mascio v. Colvin*, 780 F.3d 632, 634 (4th Cir. 2015) (quoting *Bird v. Comm'r of Soc. Sec. Admin.*, 699 F.3d 337, 340 (4th Cir. 2012)); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive[.]").  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).  It is "more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Id.* (internal quotations and citations omitted).  In determining whether a decision is supported by substantial evidence, the court does not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary." *Id.* (alteration in original) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)).  It is the ALJ's duty, and not that of the reviewing court, to resolve evidentiary conflicts, and the ALJ's decision must be sustained if supported by substantial evidence. *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996).

## III.  SUMMARY OF ISSUES AND FINDINGS OF THE COURT

The issues on appeal stem from the ALJ's finding at the second and third steps of the sequential evaluation that Plaintiff suffered "a moderate limitation" with respect to concentration, persistence, and pace. (AR 21.)  First, Plaintiff claims the ALJ erred in finding a moderate impairment in concentration without including an appropriate corresponding limitation in the RFC.[12]  (Dkt. 7 at 6–9).  Plaintiff also maintains the ALJ's failure to construct a sufficient RFC

---

[12]    Collectively, concentration, persistence, and maintaining pace constitute a single category of mental functioning.  Plaintiff challenges only the RFC's failure to adequately address the moderate limitation in concentration.

resulted in a defective hypothetical question posed by the ALJ to the vocational expert which then compromised the ALJ's finding at the final step in the sequential evaluation process.  Second, Plaintiff argues the ALJ erred by failing to adequately explain how—based on the evidence in the record—the mental RFC sufficiently addresses the ALJ's finding of moderate limitation in concentration. (*Id.*).  Third, Plaintiff asserts the ALJ erred by rejecting the state psychologists' opinions as "not persuasive" and then crafting Plaintiff's mental RFC on his own without the benefit of an opinion of a medical expert or consultative examination.  (*Id.* at 9–14).  At the very least, Plaintiff argues the ALJ had a duty to further develop the record with medical evidence sufficient to support the mental RFC.  (*Id.*)  By failing to rely on medical evidence in the record, or to supplement the record with evidence that supported the ALJ's findings, Plaintiff contends the ALJ impermissibly substituted the ALJ's lay opinion for those of the medical experts.  (*Id.*).

In response, the Commissioner argues to Plaintiff's first and second points that the mental RFC limitations that the ALJ adopted account for the assessed moderate limitation in concentration, persistence, and pace and that the ALJ reasonably explained his RFC. (*Id.* at 12–15).  On Plaintiff's third point, the Commissioner counters that the ALJ is not required to base his RFC on a specific medical opinion but may consider the entire record, that the ALJ's duty to develop the record was not triggered, and that Plaintiff cannot challenge the ALJ's development of the record now when his counsel did not do so at the administrative level. (*Id.* at 15–19).

For the reasons set forth below, the Court finds that the ALJ erred by failing to adequately explain his RFC, which renders the RFC unreviewable for substantial evidence and warrants remand.  On remand, a more fulsome explanation of the basis for the mental RFC will also likely address Plaintiff's first claim, namely that the ALJ failed to account for the moderate limitation finding with respect to concentration, persistence, and pace in the RFC.  Further, the Court also

finds that the ALJ's unexplained RFC lies outside of the scope of the ALJ's qualifications as a layperson because the record does not include any evidence from a qualified witness or reliable source that connects the ALJ's finding of a moderate limitation with the ALJ's mental RFC.  If such evidence exists in the record, it was not identified by the ALJ and cannot be found after an exhaustive review by the Court.  Therefore, it appears as though the ALJ improperly based Plaintiff's RFC on his own lay opinion rather than the relevant medical evidence in the record.

## IV. ANALYSIS

Social Security Act regulations prescribe the manner in which the ALJ must assess a claimant's RFC.  The RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. SSR 96-8P, 61 Fed. Reg. 34,474 (July 2, 1996).  The RFC assessment must identify the claimant's functional limitations and assess their work-related abilities on a function-by-function basis, including the functions in paragraphs (c), and (d) of 20 C.F.R. 404.1545, which address mental abilities and other abilities affected by impairments, respectively. *Id*. at 61 Fed. Reg. 34,475. The ALJ is required to provide a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts and nonmedical evidence. *Id*. at 61 Fed. Reg. 34,478; *Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018). "In other words, the ALJ must *both* identify evidence that supports his conclusion *and* build an accurate and logical bridge from that evidence to his conclusion." *Id*. (internal quotation marks omitted) (citing *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016) ("a necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling, including a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence")); *Thomas v. Berryhill*, 916 F. 3d 307, 311 (4th Cir. 2019) (an ALJ's discussion should contain "three

components: (1) evidence, (2) logical explanation, and (3) conclusion"). "[T]he ALJ's logical explanation is just as important as the other two [components]. Indeed . . . meaningful [substantial evidence] review is frustrated when an ALJ goes straight from listing evidence to stating a conclusion." *Thomas*, 916 F. 3d at 307; *see also Patterson v. Comm'r of Soc. Sec. Admin*, 846 F. 3d 656, 663 (4th Cir. 2017) (cleaned up) ("the ALJ's lack of explanation . . . . rendered his decision unreviewable"). Thus, a failure to provide an adequate logical explanation is "rarely, if ever," harmless error. *See Patterson*, 846 F. 3d 656, 652 (4th Cir. 2017).

### A. The ALJ Failed to Account for the "Moderate Limitation" in Concentration in the RFC.

Plaintiff argues that the ALJ's opinion is defective because despite finding moderate limitations in concentration, persistence, and maintaining pace, the ALJ failed to fashion an RFC that addressed Plaintiff's concentration impairment. Dkt. 7 at 8. Plaintiff further argues that one consequence of the ALJ's failure to craft a sufficient mental RFC is that it caused the ALJ to pose and rely upon a flawed hypothetical to the vocational expert when determining whether Plaintiff could perform other work that exists in significant numbers in the national economy. Dkt. 7 at 7-9. Specifically, Plaintiff challenges the RFC that found Plaintiff to be able to "focus for periods of two hours on work related tasks and [is] able to perform non-production pace/non-assembly line pace jobs" as inadequate because it "does nothing to address moderate restrictions in concentration." *Id*. at 8. Plaintiff notes that "jobs for unimpaired workers allow for breaks following [two-hour] periods" which renders this RFC facially inadequate. *Id*. In turn, the Commissioner counters that substantial evidence supports the ALJ's RFC assessment and Plaintiff simply ignores multiple mental limitations that the ALJ did assess in the RFC. Dkt. 12 at 12–15.

In the Fourth Circuit, a specific outgrowth of the "logical bridge" requirement is found in the rule that where the ALJ has found that Plaintiff has a moderate limitation in concentration,

11

persistence, or pace at step three of the sequential analysis, the ALJ must include a corresponding limitation in his RFC assessment, beyond merely restricting Plaintiff to performing only "simple routine, tasks," or explain why no such limitation is necessary. *Dennis v. Berryhill*, 362 F. Supp. 3d 303, 308 (W.D.N.C. 2019) (collecting cases) (citing *Mascio*, 780 F. 3d at 638); *Carpenter v. Berryhill*, 2018 WL 3385191, at *10 (E.D. Va. May 31, 2018); *Shinaberry v. Saul*, 952 F. 3d 113, 121 (4th Cir. 2020).

As to Plaintiff's first claim, the role of the Court is to determine whether there is substantial evidence in the record to support the ALJ's finding of a moderate limitation in concentration and, if so, whether there is substantial evidence to support a corresponding RFC. Here, however, the Court's review is frustrated because the ALJ failed to sufficiently explain his reasoning. Not all of the ALJ's mental RFC restrictions appear to be relevant to the moderate limitation in concentration, persistence, and pace, and the parties dispute whether some subset of the ALJ's mental RFC restrictions account for the moderate limitation finding. But this question cannot be answered in a vacuum: the arguments of both parties would seem to recognize that a necessary predicate for the Court's review of this "particularly important" issue is a sufficient logical explanation by the ALJ as to why the record evidence warrants this specific RFC. *Perry v. Berryhill*, 765 F. Appx. 869, 872–73 & n.2 (4th Cir. 2019) (declining to address whether ALJ properly accounted for moderate concentration, persistence, and pace limitation in RFC or vocational expert hypotheticals as "impossible to determine" given ALJ's non-explanation of RFC). In this case, the ALJ failed to explain his finding to the degree necessary to permit proper judicial review.

Therefore, because this matter is reversed and remanded for the ALJ to provide a more fulsome explanation of his finding of a moderate limitation in concentration and the rationale

supporting the corresponding RFC, the Court does not (and cannot on this record) make any finding as to whether there is substantial evidence to support the moderate limitation in concentration or the overall sufficiency of the mental RFC.

### B. The ALJ Failed to Adequately Explain the Challenged RFC.

Next, Plaintiff argues the ALJ erred by failing to explain how the mental RFC addressed the finding of a moderate limitation in concentration.[13]  Dkt. 7 at 9.   Plaintiff further argues this error was prejudicial because it materially compromised the hypothetical posed to the vocational expert at the final step of the sequential evaluation process. *Id*. at 9.   In turn, the Commissioner counters that the ALJ's RFC analysis was adequately reasoned and explained. Dkt. 12 at 12–15. On this point, Plaintiff is correct.

In formulating the RFC, the ALJ provided a fulsome summary of Plaintiff's allegations (AR 23) and relevant medical records (AR 23–26) and evaluated the medical opinions and prior administrative medical findings (AR 26–28).   Between the ALJ's discussion of the medical evidence and the opinions and prior administrative findings, the ALJ noted that "the claimant alleges disabling pain from his [physical maladies] and PTSD symptoms, but the record does not support disabling limitations." (AR 26). With respect to Plaintiff's mental conditions, the ALJ specifically observed that

> Mentally, he has PTSD related to his 16 years of service in the U.S. Army. The claimant had some variations in mood, but he maintained normal speech, thought process, and judgment with his medication and therapy. Overall, the claimant's mental health treatment that [sic] was conversative, routine, and outpatient, and the record shows he is generally able to manage his symptoms without difficulty. The record also shows the claimant has largely been able to maintain his activities of daily living . . . Overall, the record does not support the level of limitations alleged."

---

[13]      Here, Plaintiff does not directly challenge the ALJ's finding of a moderate limitation in concentration, only that the ALJ failed to explain how the mental RFC addressed the limitation.  Dkt 7 at 9.

(AR 26). The ALJ declared that "[b]ased on the foregoing, the undersigned finds the claimant has the above [RFC], which is supported by the evidence of record as a whole." (AR 27).

The ALJ's statements, however, "fail to explain where his [mental RFC] findings come from" on the required function-by-function basis. *Linares v. Colvin*, 2015 WL 4389533, at *8 (W.D.N.C. July 17, 2015). Because the state agency medical consultants opined that Plaintiff's mental impairments were not severe, they did not assess Plaintiff's mental RFC at all (AR 73, 77, 84–85, 87)—but the ALJ *did* find that Plaintiff's PTSD was severe, found that the state consultants' opinions on Plaintiff's mental functioning were "not persuasive," and assessed numerous mental RFC limitations accordingly. (AR 19–20, 27) (rejecting state consultant mental opinions as "not persuasive, as the current record supports ongoing treatment with medication and therapy as a result of PTSD symptoms. The record shows the claimant generally had intact mental functioning on evaluation, and he continued to improve, but the record does support PTSD as a severe impairment.")). Thus, the state agency medical consultants' opinions cannot be considered to support the specific limitations included in the ALJ's RFC. *Suide v. Astrue*, 371 F. Appx. 684, 690 (7th Cir. 2010) ("Dr. Palacci's evaluation did not include a *functional* assessment of Suide's abilities, nor did she opine about any limitations Suide's impairments may have caused [or state any formal RFC evaluation], so her report could not be used to support specific limitations included in Suide's residual functional capacity"). Instead, "[i]t is clear from the two State agency assessments, and the RFC adopted by the ALJ, that the three evaluations of Plaintiff's [mental] capacity are clearly in conflict with each other," which is a tension created by the ALJ himself and which underscores the ALJ's duty to explain his decision. *Linares*, 2015 WL 4389533, at *8; *Mascio*, 780 F. 3d at 637. It stands to reason that when the ALJ's findings are contrary to the conclusions of the medical experts there is a heightened need for the ALJ to provide a fulsome

14

explanation of his findings.  This is true even, as is the case here, when the ALJ's findings are more favorable to the claimant than the conclusions of the medical professionals.  Yet here, the ALJ failed to provide any explanation as to how the mental RFC was crafted or any meaningful justification as to why the mental RFC addresses the ALJ's finding of a moderate limitation in concentration.  *Linares*, 2015 WL 4389533, at *8 ("neither of the state agency assessments opined [numerous RFC limitations assessed by the ALJ] . . . However, all of these functions were included . . . without any explanation").  Indeed, the ALJ says nothing about any of his assessed mental RFC limitations.  The other medical opinions in the record are of little help.[14]  The appearance is that the ALJ cut his detailed yet conclusory mental RFC out of whole cloth.[15]

While it is true that the ALJ's decision must be "read as a whole"[16] and the ALJ "need only review medical evidence once in his decision"[17] such that there is no requirement that the ALJ directly link all of the discrete evidence to a conclusion, the record here clearly establishes that the "ALJ [has gone] straight from listing evidence to stating a conclusion." *Thomas*, 916 F. 3d at 307. The Commissioner seems to imply that the analytical step is present where the ALJ, as here, simply

---

[14]    Specifically, the August 23, 2021 treating source opinion of Dr. Andrew Jones is hardly enlightening. The ALJ found this opinion to be "partially persuasive, as it does not state the claimant's limitations in a vocationally relevant form, but it does identify triggering environments, as shown in the record." (AR 27). But while the ALJ states that he accordingly "considered the claimant's combat related PTSD with exaggerated startle response, particularly to loud noises, crowds, and driving," (AR 27), the ALJ does not say how the RFC addressed such considerations. For example, it is unclear whether these facts informed the ALJ's environmental limitations ("unable to tolerate exposure to extreme heat, cold, vibration, and concentrated hazards"), or aspects of the mental RFC, or some combination of the two.

[15]    As for the ALJ's physical RFC limitations, the Court observes that these align with the restrictions opined by state initial level consultant Dr. Humphries, whose opinion the ALJ found persuasive. (AR 76). The ALJ noted that Dr. Koch's opinion was the "most consistent with the current record, showing pain, but generally intact strength and sensation. There was no instability noted, but environmental limitations are needed to account for any balance problems or pain triggering conditions." (AR 27). This seems to be an implicit rejection of the opinion of state reconsideration level consultant Dr. Koch, whose assessment was less restrictive. (AR 87). Because only the ALJ's mental RFC is contested, the Court takes no position as to other aspects of the ALJ's RFC.

[16]    *Smith v. Astrue*, 457 F. App'x 326, 328 (4th Cir. 2011).

[17]    *McCartney v. Apfel*, 28 F. App'x 277, 279 (4th Cir. 2002).

points to evidence that he apparently believed supported his RFC evaluation and dispelled other evidence suggestive of disability. (*See* Dkt. 12 at 13–15).  But "summariz[ing] evidence that [the ALJ] found credible, useful, and consistent" does not itself "explain[] how he concluded—*based on this evidence*—that [Plaintiff] could actually perform the tasks required by [the RFC]."[18] *Woods*, 888 F. 3d at 694; *Elizabeth P. v. Kijakazi*, 2021 WL 3754652, at *9 (W.D. Va. Aug. 25, 2021) (holding ALJ did not establish logical bridge by merely summarizing evidence, rendering opinion unreviewable); *see Monroe*, 826 F. 3d at 189 ("The ALJ cited evidence that he appeared to believe tended to discredit [claimant's] testimony . . . However, he failed to 'build an accurate and logical bridge'").

Thus, this is not a case where the ALJ "addressed the impairments, set out limitations, and explained why the evidence supported those limitations but not others." *Turner v. Comm'r of Soc. Sec.*, 2024 WL 2764722, at *5 (4th Cir. May 30, 2024) (citing *Shinaberry*, 952 F. 3d at 122). To be sure, what is required of the ALJ is not a high bar. But the Court cannot say that the ALJ "grappled with the evidence" beyond straightforwardly rehashing it with little illuminating commentary, that the ALJ "provide[d] reasons connecting that evidence to the conclusions [they] reached about [Plaintiff's] RFC," or that the Court is *not* "left to guess about how the ALJ arrived at his conclusions on the claimant's ability to perform relevant functions." *Id.* (citing *Mascio*, 780 F. 3d at 637).  For these reasons, the case is remanded to the Commissioner for further explanation regarding the basis of the mental RFC.

---

[18]     The Commissioner specifically points to the ALJ's citation of (1) Plaintiff's apparently favorable mental health treatment records, (2) his ability to "manage his symptoms without difficulty," and (3) his being "largely [] able to maintain his activities of daily living" as a "reasonably discernable explanation for [the ALJ's] RFC assessment that accounts for Plaintiff's moderate limitation to concentration, persistence, or pace. Dkt. 12 at 13–15. But there is nothing obvious or self-evident about this evidence that establishes a connection to any of the ALJ's assessed RFC restrictions. *Elizabeth P.*, 2021 WL 3754652, at *9.

**C. The ALJ Erred by Assessing an RFC in Excess of His Qualifications as a Layperson**

Lastly, Plaintiff argues that the ALJ erred by failing to obtain an opinion from a mental health source to inform his mental RFC findings. Dkt. 7 at 11.  Specifically, Plaintiff's position seems to merge two legally distinct but related arguments: that (1) the ALJ's "duty to develop the record was triggered by [later] evidence submitted at the hearing level which – by his own admission – [showed a greater degree of mental impairment and was therefore] inconsistent with both [state agency consultant opinions]" (Dkt. 7 at 11–13), and (2) the ALJ impermissibly asserted his own "lay opinion" of Plaintiff's condition by crafting a mental RFC without the benefit of any supporting medical opinions (because the ALJ rejected both state agency mental assessments as "not persuasive"). (Dkt. 7 at 11, Dkt. 14 at 2–3).  The Commissioner responds by asserting that the ALJ properly relied on the whole record rather than a specific medical opinion in forming his RFC and that Plaintiff cannot challenge the ALJ's development of the record now when his counsel did not do so at the administrative level. (Dkt. 12 at 15–19).  The Court finds that although the ALJ's duty to develop the record was not triggered *per se*, the ALJ did err by assessing a mental RFC based on his lay opinion rather than crafting the RFC in functional terms and based upon the medical evidence in the record.

As to the first issue, "when there is 'insufficient evidence to determine whether an individual has a medically determinable impairment that could potentially account for his or her alleged symptoms,' then it may be appropriate to 'develop evidence[.]'" *Carrie B. v Kijakazi*, 2023 WL 5154505, at *6 (E.D. Va. Aug. 10, 2023) (quoting SSR 16-3p, 2017 WL 5180304, at *4 (Oct. 25, 2017)).  "ALJs have a duty to 'explore all relevant facts and inquire into the issue necessary for adequate development of the record, and cannot rely only on the evidence submitted by the [plaintiff] when the evidence is inadequate[.]'" *Id*. (quoting *Cook v. Heckler*, 783 F. 2d 1168, 1173

(4th Cir. 1986)).  "This duty to develop the record is triggered when there is insufficient or inconsistent evidence." *Id*. (internal quotation marks omitted). "When an ALJ fails to adequately develop the record and this failure results in prejudice or unfairness to the plaintiff, then remand is warranted." *Id*. (citing *Sims v. Harris*, 631 F. 2d 26, 28 (4th Cir. 1980)).  But "[a]lthough the ALJ has a duty to explore all relevant facts and inquire into the issues necessary for adequate development of the record, he is not required to function as the claimant's substitute counsel, but only to develop a reasonably complete record." *Bell v. Chater*, 57 F. 3d 1065, *5 (4th Cir. 1995) (Table) (cleaned up); *see Schaller v. Colvin*, 2014 WL 4537184, at *9 (E.D.N.C. Sept. 11, 2014) (holding that when claimant was represented by counsel, ALJ was allowed to presume that he presented his best case); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987) ("It is not unreasonable to require the claimant, who is in a better position to provide information about his own medical condition, to do so."). The pertinent inquiry remains "whether the record contained sufficient medical evidence for the ALJ to make an informed decision as to [Plaintiff's] alleged [disability][.]" *Craft v. Apfel*, 164 F. 3d 624, *3 (4th Cir. 1998) (Table); *see Scarberry v. Chater*, 52 F. 3d 322, *4 n.13 (4th Cir. 1995) (Table).

Although Plaintiff was represented by counsel (Ms. Illacqua) for several months leading up to and during the August 22, 2023 hearing before the ALJ, and Plaintiff's then-counsel took no issue with the development of the record at that time (AR 42), the Court declines to find the issue to be waived given that remand is warranted for independent reasons, discussed *supra*.  On remand, there is no procedural bar to the ALJ further developing the record if they determine additional evidence is necessary to draft and justify Plaintiff's mental RFC.  Although additional explanation supporting the mental RFC is necessary, it is not clear that additional evidence is required.  The central issue does not appear to be a lack of medical evidence in the record, but rather a lack of

analysis of the evidence by the ALJ.  Plaintiff's apparent suggestion that the ALJ's duty to develop the record was *per se* triggered lacks merit.  Plaintiff asserts there is a triggering inconsistency in the record based on the ALJ recognizing that "evidence submitted at the hearing level [] was – by his own admission – inconsistent with both the opinion of Dr. Leizer and the opinion of Dr. Milan" (Dkt. 7 at 13 (citing AR 27)), relying on *Derrick W. v. Kijakazi*, 2022 WL 488067 (W.D. Va. Feb. 17, 2022). (Dkt. 7 at 11–13).  But on this point, Plaintiff's reliance on *Derrick W.* is misplaced. In *Derrick W.*, the court rejected the plaintiff's argument that new disability evidence received after the state agency consultants had rendered their opinions but before the ALJ's decision necessitated that the ALJ obtain an additional medical opinion where the ALJ instead explained how the new evidence would not change the state agency opinions (and went on to properly craft the RFC). 2022 WL 488067, at *5. The court noted that

> The regulations also contemplate that a claimant may produce additional medical evidence between the last DDS report and the ALJ's hearing decision and that the ALJ will review all available evidence in determining whether the claimant is disabled.[19] The ALJ is not required to get an updated medical opinion about the claimant's RFC simply because the record contains new or additional clinical findings . . . that will inform the ALJ's RFC assessment.[20] Rather, as long as the ALJ does not "not substitute [their] own lay opinion for a medical expert's [opinion] when evaluating the significance of clinical findings," the ALJ is free to craft an RFC based on all the relevant evidence in the record.[21]

Here, the receipt of additional evidence after the state agency assessments did not require the ALJ to seek another medical opinion.  Plaintiff insists that the ALJ himself identified such an

---

[19]    2022 WL 488067, at *5 (citing SSR 96-6p, 1996 WL 374180, at *4 (July 2, 1996); 20 C.F.R. § 404.1520c(a)).

[20]    *Id*. (citing SSR 96-6p, 1996 WL 374180, at *4 (requiring ALJs to "call on a medical expert" where "additional medical evidence is received that in the opinion of the [ALJ] may change the State agency . . . consultant's finding that the impairment(s) is not equivalent in severity to any impairment in the Listing of impairments")).

[21]    *Id*. (collecting cases) (citing *Arakas v. Comm'r, Soc. Sec. Admin.,* 983 F.3d 83, 108 (4th Cir. 2020); *Felton-Miller v. Astrue*, 459 F. App'x 226, 230–31 (4th Cir. 2011)).

SSR 96-6p triggering inconsistency, but the ALJ's opinion makes no such distinction between the before- and after-state received evidence, stating merely that

> the current record supports ongoing treatment with medication and therapy as a result of PTSD symptoms. The record shows the claimant generally had intact mental functioning on evaluation, and he continued to improve, but the record does support PTSD as a severe impairment

(AR 27).

Plaintiff thus seems to overread the word "current" in the ALJ's opinion as referring to later received evidence.  Regardless, SSR 96-6p was not triggered because the ALJ, while believing that Plaintiff's PTSD was a severe condition, "in [his] opinion" clearly did not view the PTSD as "equivalent in severity to any impairment in the Listing[s]," as evidenced by the ALJ's step three analysis.[22] (*See* AR 20–22); SSR 96-6p, 1996 WL 374180, at *4.  More generally, this Court's review of the later received evidence (which does not indicate "greater mental impairment") and the entire relevant record confirms that observations such as "ongoing treatment [of PTSD] with medication and therapy," "intact mental functioning on evaluation," and "continued [] improvement"[23] are in accord with record findings from both before and after the state experts opined.[24] Thus, based on the record evidence the Court cannot find that an inconsistency or deficiency existed such that ALJ had a specific duty to further develop the record.

---

[22]    The ALJ is indeed "responsible for deciding the ultimate *legal* question of whether a listing is met or equaled" and thus bears significant latitude in assessing the severity of an impairment. *See* SSR 96-6p (emphasis added). SSR 96-6p does not require an ALJ to obtain a medical opinion based on the sole fact that they ascertained a severe (but not listing-equivalent) impairment from the evidence when no record medical opinion does the same. The Court declines to read the regulations as imposing such a requirement.

[23]    That the after-received evidence demonstrates "continued improvement" in Plaintiff's PTSD also does not favor a finding of prejudice, disability, or unfairness in Plaintiff's favor.

[24]    *See, e.g.*, AR 24-26, 354, 359, 622, 630–34, 640, 1088–89, 1331-35, 1395–96, 1423–28, 1498–1503, 1508, 1510–11, 1538, 1603-09. The Court notes that there is little evidence pertaining to Plaintiff's mental health in 2023 in the record. While Plaintiff's therapist does not appear to have discussed Plaintiff's treatment with mental health medications in treatment notes until after the date the state agency initial determination was made, records indicate that Plaintiff was prescribed medications and had been filling at least some of those medications throughout 2021 and that Plaintiff had long been receiving therapy treatment from his psychologist.

However, as to the second issue, the Court agrees with Plaintiff, and disagrees with the Commissioner, in finding that the ALJ improperly crafted the mental RFC based on his own "lay opinion." A claimant's RFC is "an administrative assessment made by the Commissioner based on all the relevant evidence in the case record," *Felton-Miller v. Astrue*, 459 F. Appx. 226, 230–31 (4th Cir. 2011). An ALJ is not required to obtain an expert medical opinion as to a claimant's RFC and may properly base RFC findings on a claimant's "subjective complaints, the objective medical evidence, and the opinions of treating, examining, and non-examining physicians." *Id.*; *Anna. R. v. Kijakazi*, 2022 WL 1005300, at *10 (E.D. Va. April 4, 2022). But while the discretion afforded to the ALJ in crafting an RFC is broad, it is always limited by the fact that an "ALJ, as a layperson, is generally not qualified to assess a claimant's RFC on the basis of bare medical findings." *Tiffany D. v. Commissioner of Social Security*, 2021 WL 363790, at *4 (W.D.N.Y. Feb. 3, 2021) (collecting cases); *see Derrick W.*, 2022 WL 488067, at *5 (citing *Arakas v. Commissioner, Social Security Administration*, 983 F. 3d 83, 108 (4th Cir. 2020)) ("as long as the ALJ does not substitute [their] own lay opinion for a medical expert's opinion when evaluating the significance of clinical findings, the ALJ is free to craft an RFC based on all the relevant evidence in the record"). Where "no medical opinion supports the [ALJ's] RFC determination . . . he is simply not qualified to interpret raw medical data in functional terms." *Farrar v. Astrue*, 2012 WL 3113159, at *11 (E.D. Va. July 13, 2012) (quoting *Nguyen v. Chater*, 172 F. 3d 31, 35 (1st Cir. 1999)). Moreover, although an ALJ is permitted to "render a common sense judgment about functional capacity even without a physician's assessment . . . where the medical evidence shows relatively little physical impairment," *Herschel G. v. Saul*, 2019 WL 4345377, at *3 (W.D. Va. Sept. 12, 2019) (quoting *Manso-Pizarro v. Sec'y Health & Human Servs.*, 76 F. 3d 15, 17 (1st Cir. 1996)), "[c]ourts [] remain wary of permitting an ALJ to use common sense to assess mental

limitations, which are by their nature highly complex and individualized." *Tiffany D.*, 2021 WL 363790, at *4 (cleaned up).

Under these principles, the ALJ impermissibly assessed Plaintiff's mental RFC based on his own interpretation of the "raw data" and without the benefit of a medical opinion or data that expressed Plaintiff's limitations in *functional* terms. The state agency experts concluded that Plaintiff did not have severe mental impairments and did not assess his RFC, nor did they provide any meaningful account of Plaintiff's functional limitations.[25] (AR 73, 77, 84–85, 87). Similarly, the only other medical opinion of record bearing on Plaintiff's mental health issues is the August 23, 2021 letter of Dr. Andrew Jones, Ph.D. The Jones letter recounts some of Plaintiff's symptoms, but which the ALJ recognized as merely "partially persuasive, as it does not state the claimant's limitations in a *vocationally* relevant form, but it does identify triggering environments, as shown in the record."[26] (AR 27, 1240 (emphasis added)). And the Court's review of the entire record confirms that while it is certainly voluminous (Dkt. 12 at 17), it is replete only with "diagnostic evidence" (treatment notes) devoid of material relevant to understanding the impact of Plaintiff's

---

[25]    Dr. Leizer noted that Plaintiff was "capable of doing a variety of [household] tasks [as] well as perform childcare for a significant portion of the day." (AR 73, 74, 75). Dr. Milan agreed (AR 85) and also stated that Plaintiff "takes care of his granddaughter which suggest that he is able to function adequately" and Plaintiff "would do fairly well with written instruction, but would struggle somewhat with spoken instructions." (AR 81). The Court finds that these statements have insufficient functional relevance and in any case, it is unclear how the ALJ's mental RFC determination reflects these statements as the ALJ did not provide an adequate explanation, discussed *supra*.

[26]    Dr. Jones' letter stated that Plaintiff's symptoms "include [] intrusive disturbing memories, increased anxiety and hypervigilance around crowds of people, fear of being trapped on a busy highway, start reaction to loud unexpected noises, and restless sleep with nightmares." (AR 1240). Accordingly, ALJ stated he "considered the claimant's combat related PTSD with exaggerated startle respond, particularly to loud noises, crowds, and driving." (*Id.*) Because the ALJ did not adequately explain his RFC, it is unclear how these considerations informed the assessed limitations beyond the driving restriction. *See supra* note 14. Moreover, aside from the driving-specific symptoms, none of the mental health symptoms cited by Dr. Jones (and evident in the record) are connected to the mental RFC limitations as a matter of common-sense judgment. *Tiffany D.* 2021 WL 363790, at *4–5.

mental limitations on Plaintiff's ability to work.[27] *Tiffany D.*, 2021 WL 363790, at *4–5 (quoting *Nanartowich v. Commissioner of Social Security Administration*, 2018 WL 2227862, at *11 (W.D.N.Y. 2018)). Thus, "[i]t was simply beyond [the] ALJ['s] [] ability, as a layperson, to craft the highly specific [mental] RFC without [] medical support" "substantiating plaintiff's ability to perform" that RFC. *Id.* at *5.

The Commissioner does not seem to dispute that the ALJ formed the RFC without functional information on Plaintiff's mental condition, arguing rather that the ALJ is entitled to base the RFC on the entire record and that "Plaintiff fails to show how the ALJ's rejection of [the opinions of the state agency psychological consultants who opined he had no mental limitations] in favor of [the ALJ's] RFC assessment that found additional mental limitations prejudices him." Dkt. 12 at 16. These contentions, however, miss the mark. As to the Commissioner's first point, the ALJ's authority to form the RFC on the whole record is not in dispute, but it is constrained by his abilities as a lay person. The ALJ's error lies in that he seemingly crafted the mental RFC from his own subjective lay opinion and rather than relying on medical evidence found in the record. As to the Commissioner's second point, "the deficiency here does not stem from the fact that no medical source assessed plaintiff with disabling limitations, but rather from the fact that no medical sources assessed plaintiff's functional limitations, disabling or not."[28] *Tiffany D.*, 2021 WL

---

[27]     *See supra* note 24; *see also* AR 1325–26. The relevant record consists largely of treatment notes and the Court's review indicates that while there are numerous descriptions of Plaintiff's symptoms, there are not "any treatment notes reflecting plaintiff's functional limitations that could permit [the ALJ] to formulate the RFC." *Tiffany D.*, 2021 WL 363790, at *5.

[28]     The Commissioner suggests, based on two cases from the Northern District of Illinois, that Plaintiff's argument is "quizzical" because ALJs need not rely on a specific medical opinion in determining the RFC and because there is no "prejudice" stemming from the ALJ's adoption of any RFC despite the state experts' non-assessment of RFC in light of their belief that Plaintiff did not have severe PTSD. Dkt. 12 at 16 (citing *Karla J.B. v. Saul*, 2020 WL 3050220, at *4 (N.D. Ill. June 8, 2020); *Patrick C. v. Saul*, 2020 WL 6287370, at *8 (N.D. Ill. Oct. 27, 2020)). The Court finds these nonbinding opinions to be distinguishable from the case at hand and directly contradicted by cases, including cases from this Circuit, which are cited herein.

363790, at *5; *cf. Vega-Valentin v. Astrue*, 725 F. Supp. 2d 264, 272 (D. P.R. 2010) (ALJ impermissibly assessed detailed mental and physical RFC in light of physician opinions concluding claimant had no impairments and thus stating no RFC, and lack of any other record evidence "attempt[ing] to relate [plaintiff's] impairments to her functional limitations"); *Tompkins v. Colvin*, 2014 WL 294474, at *6–7 (D. Me. Jan. 27, 2014) (where ALJ determined plaintiff had multiple severe mental impairments, ALJ impermissibly assessed mental RFC on raw medical evidence after rejecting (1) state agency opinions concluding plaintiff had no severe mental impairments, as neither expert "had the benefit of review of the full record"; and (2) "the only other expert RFC opinion of record bearing on mental impairments").

Thus, in this case the ALJ impermissibly assessed a mental RFC in excess of his qualifications as a lay person, which gives rise to another ground for remand.

---

In *Karla J.B.*, the court found that the ALJ did not err in assessing RFC restrictions beyond those determined by the state agency consultants (who believed the plaintiff had no severe impairments) because the ALJ *partially* relied on the state expert's opinions (assigning them "partial weight") but also considered the entire record and found that it supported further limitations. 2020 WL 3050220, at *4. Importantly, the reconsideration state expert "specifically opined [] in RFC terms, Plaintiff could perform 'heavy' work," whereas the ALJ found that the plaintiff had severe hand tremors and assessed RFC limitations to "frequent" handling and fingering and "medium" work. *Id. Karla J.B.* did not involve the complete absence of functional descriptions of the plaintiff's condition, nor did the ALJ in that case flatly disclaim support of the state opinions. Moreover, the *Karla J.B.* ALJ's RFC limitations can easily be understood as commonsense judgments about physical impairments. *Cf.* 2020 WL 3050220, at *5 ("Both limitations directly relate to Plaintiff's claims that her hands shake when holding or manipulating objects and working with her hands.").

Much of the same can be said of *Patrick C.* In *Patrick C.*, state agency experts did assess the plaintiff's physical and mental RFCs, and although "the ALJ didn't' fully adopt the opinions of the state agency reviewers, according them partial weight, [] he tracked them nearly identically. It's easy to see where the mental RFC came from." 2020 WL 6287370, at *5. Importantly, the ALJ provided a "rather detailed explanation" for his mental RFC. *Id.* Separately, it was not error for the ALJ to add stair, ramp, and climbing physical RFC restrictions after reciting evidence that plaintiff's back impairment sometimes affected the range of motion in his legs. *Id.* at *8.

Thus, the Commissioner's cited authorities do not address Plaintiff's case, in which the ALJ imposed a detailed (not commonsense) *mental* (not physical) RFC, after plainly disclaiming the state expert opinions as "not persuasive," and without the benefit of any functional descriptions of Plaintiff's limitations.

## VI.  CONCLUSION

Based on the foregoing, the Court finds that remand pursuant to the fourth sentence of 42 U.S.C. § 405(g) is warranted.  On remand, the ALJ must reconsider his assessment of Plaintiff's RFC in light of his findings at each step of the sequential analysis. The ALJ must develop an explanation that provides a "logical bridge" between the evidence and his RFC limitations, as the regulations require.  Specifically, the ALJ must include an RFC limitation corresponding to his moderate limitation in concentration, persistence, or pace, or clearly explain why no such limitation is necessary. And the ALJ's mental RFC determination must be supported by medical opinions or other evidence of record that express Plaintiff's limitations in functional terms.

Accordingly, it is hereby

**ORDERED** Plaintiff's Motion for Summary Judgment (Dkts. 7, 15) is **GRANTED** to the extent that the Commissioner's final decision denying benefits for the period between Plaintiff's alleged onset date of May 24, 2021, and the date that Plaintiff was last insured, March 31, 2023, is **REVERSED** and it is **ORDERED** that the case is **REMANDED** to the Commissioner for further proceedings consistent with this Opinion and Order; and it is further

**ORDERED** that the Commissioner's Motion for Summary Judgment (Dkt. 11) is **DENIED**.

The Clerk is directed to terminate this civil action.

**ENTERED** this 26th day of February, 2025.

*William E. Fitzpatrick*
William E. Fitzpatrick
United States Magistrate Judge

Alexandria, Virginia